## CHARLES McMICKEN *v.* J. B. MAXENT, Executor.

An appeal does not lie from an interlocutory order refusing to make the widow and heirs parties to a suit against the executor.

APPEAL from the District Court of East Baton Rouge, *Burk*, J. *J. M. Brunot*, for the appellant, contended: This is an appeal from the ruling or judgment of the court below, refusing the plaintiff the right to cite in, and make the widow and heirs of *J. B. F. Maxent*, one of the defendants deceased, before issue joined, parties to the suit. The court will find a suggestion of the death of *Maxent*, simply, by his counsel, without any "leave" asked

for or granted by the court, "to make proper parties," as averred in his petition afterwards filed on the 21st September, 1850. We have yet to learn, that the death of a defendant regularly in court, by service upon him of plaintiff's petition, enables one, claiming to be the representative of the last will of another person, to assume and take, in the manner here attempted, the attitude of the original defendant. In the present instance, if the person praying "he may be received as a party to said proceedings in lieu and stead of said *Maxent*," is viewed in the light of a plaintiff, then, in that event, as no replication is known to our system of practice, his averments must be considered as denied, and require proof. When *Maxent* died, if his counsel had suggested not only his death but, as is the custom, the name of his heirs or representatives with leave to make them parties, there could have been no objection ; provided always the right of these persons to represent the deceased in the suit, was not controverted. Vide C. P., art. 120, *et passim.*

Our bill of exceptions explains the sole question presented for the solution of this honorable court, whether in an action personal to the defendant, the latter is released by death, and his heirs and widow cannot be made parties, but, on the contrary, the court has the right to pre-judge the question before the plaintiff has had an opportunity of citing said widow and heirs. It will be seen from the averments and the prayer of our petition, we no where ask a judgment against the estate of *A. Couvillier, Senior ;* but sue the executor, or he who claims to act as such, as a trespasser and responsible to us in damages, as any other individual for injury.

The judgment of the court below refusing us the right to make the widow and heirs of *Maxent* parties in lieu of the deceased, and decreeing *Thomas G. Morgan, Esq.*, executor of *A. Couvillier, Senior,* to be the proper defendant, we viewed, at the time, to be in effect a non-suit. It is not pretended the persons we propose to make parties, are not the widow and heirs of *Maxent,* and we know of no law, in such a case, which deprives us of the right to cite them in and thus make them defendants. It seems to us the heirs ought to become their own defensors, in a suit where their ancestor has been regularly made a party, since his estate is liable in their hands for his quasi-contracts or offences.

For the sake of argument, admit the suit was one seeking a judgment against *A. Couvillier, Senior's* succession, represented by an executor of his last will, what right would a subsequent executor, upon the decease of the first, have to assume, in the mode here proposed, responsibility for the tortious acts of the latter, and thrust himself forward as a defendant in his stead. The deceased, against whom the action was brought, might, with his surety, be well able to satisfy any judgment we expect to recover ; but it, by no means follows this would be the case with the substitute. Besides all this, the evidence of the illegal acts of the first executor, might very well apply to him, and perhaps his surety, to establish our right to recover ; but we cannot conceive how the subsequent executor could be bound by the acts of the predecessor, and the estate he represents amerced in damages, where the acts of the executor are acts of trespass. The trespasser is liable for his own acts in damages, and cannot discharge himself on the plea that he is only an agent or representative. Vide *Tourne et al.* v. *Lee et al.* 8 N. S. 549. *Kernion* v. *Guenor,* 7 N. S. 171.

If at the decease of *Maxent,* the names of his heirs had been given, and we had neglected to cite and make them regularly defendants, our action could very readily have been hastened by the appearance of the heirs.

We trust your honors will reverse the judgment of the lower tribunal, by ordering our motion for leave to cite and make the widow and heirs of *Maxent* parties, be allowed ; and the decree declaring *Thomas G. Morgan,* executor, the proper party defendant, be avoided and reversed, as neither supported by law or the evidence.

*T. G.* and *P. H. Morgan,* contended: In order to place this case properly before the court, it will be necessary to state, with some minuteness, the facts so far as will now be considered by the court, and the averments in the petition for injunction. In the suit of *Fletcher's Heirs* v. *The Executors of A. Couvillier, Sen.* deceased, and others, judgment was rendered in favor of the defendants, and against the plaintiff, for the sum of eighteen thousand nine hundred dollars. This judgment the defendant in injunction avers has never been satisfied ; and he having been 'appointed dative testamentary executor of the last will and testament of *A. Couvillier,* ordered out an execution to enforce the

McMicken<br>v.<br>Maxent.

payment of so much thereof as was due the estate he represents, to wit. nine thousand four hundred and fifty dollars—*Couvillier* having been the owner or, at least, the possessor of one half of the whole tract sued for. This execution was levied upon the tract of land recovered by the heirs of *Fletcher* from the defendant's testator; and *A. Couvillier, Jun.,* and *John Davenport (McMicken* pretending to have acquired a title to this land from the heirs of *Fletcher,)* obtained an injunction.

*J. B. F. Maxent,* dative testamentary executor, died on the —— day of ——, in the year 1850; and at July term, 1850, of the Sixth District Court, his counsel. who had caused the writ enjoined to issue, suggested his *(Maxent's)* death. The statement in the motion made by *McMicken* to set aside the order of assignment, that the counsel of *Maxent's* executor, who suggested his death, " moved for leave to make his heirs and representatives parties," is not correct. No such leave was asked for, and no such order made.

On the —— day of ——, 1850, *T. G. Morgan* was appointed dative testamentary executor of the will of *A. Couvillier.* On the —— day of ——, 1850, *T. G. Morgan* gave notice to the plaintiff in injunction, and also to the intervenors of his said appointment. Answer of *Morgan,* dative testamentary executor, to the petition for injunction, filed October, 1850.

On the —— day of ——, 1850, the heirs of *Fletcher, (McMicken's* pretended vendors,) filed a petition of intervention in the case; and on the 30th of August, 1850, they filed a supplemental petition of intervention. On the 23d of October, 1850, the counsel for *McMicken* filed a motion suggesting the death of *Maxent,* the executor, and moved the court " for leave to cite in and make the heirs of the deceased parties defendant in this suit." He prays that the widow of *Maxent* be cited, and served with a copy of his petition, " and that he have judgment against her, as representing the deceased." The case was. on the —— day of October, 1850, assigned for trial on the ——. The motion filed on behalf of *McMicken,* on the 23d October, 1850, for leave to make the widow of the executor party defendant was overruled, and- leave refused. From this interlocutory order, or ruling of the court, the present appeal has been taken.

On behalf of the appellee, the following points are made : 1. An appeal will not lie in such case: the present appeal should, therefore, be dismissed. One may appeal from all final judgments rendered in causes in which an appeal is given by law. C. P. 565. One may likewise appeal from all interlocutory judgments, when such judgment may cause him an irreparable injury. C. P. 566.

In the case of *Fortin* v. *Randolph,* the late Supreme Court held this language : " The defendant and appellee meets the plaintiff, by averring that the decision is not such a one as can be appealed from. To ascertain whether this objection is well taken, we must examine if it is a final judgment, or a decree of such a nature as will occasion a grievance irreparable to the party against whom it is given. It is not a final judgment; for the cause is yet pending and stands continued. It does not work a grievance irreparable. It is quite different from the case of *Pranchin* v. *Andry,* 4 M. R. 314, to which we have before referred, and from all other cases decided in this court upon that principle. Without referring to each particular decision, it will be found that those were cases where the judge *a quo* refused the parties a new trial or continuance; deprived them of the benefit of a judgment obtained; set aside some process or writ given in the preliminary stages of a suit to secure the plaintiff's rights, or discharged the defendant out of custody when arrested. If the judge erred in the cases just put, the party was without remedy and the injury irreparable. Supposing a mistake in this case, no such consequence is perceived; the cause stands continued; the parties will have it tried, it is presumed. Mere delay cannot be regarded as an irreparable injury." 3 M. R. 171. 9 M. R. 494. 10 M. R. 444. *Fortin* v. *Randolph,* 11 M. R. 275.

Again, in the case of *Penrice* v. *Crothwaite, et al.,* 11 M. R. 546, the same court held the following language : " We cannot go into the opinion of the court on the refusal to receive a supplemental petition. It does not produce a grievance irreparable in this case, and, therefore, is not a decision from which an appeal lies."

These cases cover the whole ground for which we contend. A supplemental petition, in the form of a motion, was filed by plaintiff in injunction, suggesting the death of the executor *Maxent.* This was supererogatory ; the death had been suggested by his counsel at the previous term of the court; but the

motion, or supplemental petition—let it be called which it will—then goes on to state the deceased left a widow and children, and "prays the said widow be served with the original petition herein filed against her late husband, and be cited to answer thereto in the legal delays, and that he have judgment against her, as representing the deceased, and he will pray," &c. This, as we have before stated, was refused.

But there are other authorities on this point to which the attention of this court is requested. 6 L. R. 435. In the case of *Geordano* v. *Thomas et al.*, 13 L. R. 315, the opinion of the court was delivered by his honor the present chief justice. It is brief: "This is an appeal from an order of the court below dismissing a supplemental petition filed by the plaintiff. We are of opinion that no appeal lies from a decree of this description." And the appeal was dismissed. See also on same subject, *Parvageaud* v. *His Creditors*, 13 L. R, 354; *Richardson* v. *Ledbetter*, 14 L. R. 156; *Hart* v. *Phillips*, 1 R. R. 223; *The State* v. *The Judge of the First Judicial District*, 2 R. R. 395; *Osborne* v. *Clayton*, 3 R. R. 437; *Bailey* v. *Sims*, 3d Ann. 217; *Walker* v. *Caldwell*, 4th Ann. 12.

The cases (6 L. R. 435) above cited, (9 M. R. 519, and *Park et al.* v. *Porter*, 2 R. R. 343,) do not, in the least, militate against the doctrine we have seen supported in the cases above cited. The latter case is a fair illustration of an exception to the general rule. A large quantity of molasses on board a ship bound for New York had been attached. The intervenor took a rule to show cause why the cargo of molasses should not be delivered to him on his giving bond, &c. The rule was made absolute on the intervenor giving bond in the sum of $600, and plaintiff appealed. On motion to dismiss the appeal, on the ground that the judgment on the rule was not final, and did not work an irreparable injury to the plaintiff, the motion was overruled; because, if the property had been supposed to be taken to New York, the plaintiff would have nothing out of which the judgment which might have been rendered in his favor could be satisfied.

The legal rights of the appellant are perfectly clear. They could have taken a bill of exceptions to the ruling of the court in refusing to grant the prayer of the supplemental petition. And if, on appeal taken from the final judgment, this court should consider that there was error in the decision of the court in respect to the interlocutory matter, the case would be sent back, to be proceeded in according to law. It must not be overlooked, that there are now parties before the court competent to stand in judgment, to wit, the present dative testamentary executor and the sheriff. We consider that we are warranted in saying, under the circumstances of the case, and the authority of the cases cited, that this appeal is taken solely for the purpose of delay; and, therefore, should be not only dismissed, but that damages should be allowed as for a frivolous appeal. We consider we hazard nothing in saying, that after a careful examination of the record—looking at the interest the party enjoining has to procrastinate; the refusal of his agent and attorney to exhibit the power of attorney under which he signed the petition, took the oath required to obtain the injunction and the bond he executed ; the allegations of the petition and supplemental petition of intervenor, and his whole course heretofore—this court will see that the object of this appeal is delay, and nothing else. If, however, the court shall determine that the interlocutary decree rendered by the district court can be appealed from, then we submit.

2. That there is no error in the interlocutory decree, or ruling of the court, refusing permission to the plaintiff in injunction to make the widow of *Maxent*, late dative testamentary executor, a party to the suit, and that said judgment, or ruling of the court, should be affirmed at the costs of the appellant.

A proper elucidation of this point can be more readily obtained by a close examination of the petition for injunction, which will clearly show, notwithstanding the evident attempt at obscurity, and the total want of legal precision in the language used, that the plaintiff in injunction, at the time the petition was framed, never thought of making the dative testamentary executor personally responsible. A celebrated diplomatist is reported to have remarked, that language was given to man to enable him to conceal his meaning! It would really appear as if the learned counsel for appellant had acted upon this saying when he concocted the petition under consideration. But there is enough in the midst of all the obscurity to satisfy the mind, that his idea of any personal pecuniary responsibility on the part of the dative testamentary executor, cannot now avail the party; and is only now lugged in as a part and portion of the studied attempt at obtaining delay.

To show this more satisfactorily, we will quote all such parts of the petition for injunction as have any bearing on the matter: "The petition of *Charles McMicken*, resident of the city of Cincinnati and State of Ohio, most respectfully represents to your honorable court: A certain individual, calling himself *J. B. F. Maxent*, dative testamentary executor of the will of *A. Couvillier*, *Sen.*, deceased, by appointment derived from your honorable court, and a resident of the parish of Orleans, State of Louisiana, and *Leroy C. Morris*, sheriff of the parish of East Baton Rouge aforesaid, have, in violation of your petitioner's rights of property under an execution or writ of *fieri facias*, issuing in a suit known on the docket of your honorable court by No. 1446, entitled '*A. Fletcher et al. v. Executors of A. Couvillier et al.*,' seized and advertised to be sold for cash," &c. "Your petitioner charges the whole proceeding, on the part of the said *Maxent*, as illegal, tortious and void in law, and entitle your petitioner to claim damages in the sum of two thousand dollars on the foregoing and following grounds," &c. "Ground 3d. The evident attempt to collect monies, which by the records of the suit itself have been already paid, upon the judgment or execution thereon, and in support of this he annexes hereto a copy of the execution now issued." &c.

The prayer of the petition is as follows: "The premises considered, for the protection of your petitioner's rights, he prays your honorable court to grant an injunction restraining the said *J. B. F. Maxent*, styling himself executor aforesaid, and *Leroy C. Morris*, sheriff, from proceeding any further under the said execution, or said pretended judgment, until the further order of your honorable court; and that on hearing, said injunction be rendered perpetual. Petitioner further prays, that said *J. B. F. Maxent* and *L. C. Morris*, sheriff, be each duly cited to answer the petition, and be, *in solido*, sentenced, as co-trespassers on your petitioner's rights and property, to pay him damages, two thousand dollars; and that your petitioner have all such other and further relief as may be just and equitable, and trial by jury. (Signed,) J. M. BRUNOT, Agent for Petitioner."

In considering the question now before the court, the first fact that attracts attention is, that the *fieri facias* was issued at the order of *Maxent*, as dative testamentary executor. 2. That his *(Maxent's)* capacity as executor, is not denied, or in any manner put at issue. It is therefore admitted. 5 L. R. 403.

Looking at *McMicken* in the light of a defendant; considering that his petition is an answer to the demand of the plaintiff, and that by not putting directly at issue the representative capacity of the plaintiff, that capacity is admitted, we will proceed to examine the words of the petition for injunction. It sets forth that "a certain individual, calling himself *J. B. F. Maxent*, dative testamentary executor of the will of *A. Couvillier, Sen.*" &c. Again: "Your petitioner charges, the whole proceeding on the part of said *Maxent* is illegal, tortious, and void in law, and entitle your petitioner to claim damages in the sum of," &c.

"Said *Maxent!*" What said *Maxent?* To whom does the petition refer? Evidently to the dative testamentary executor first spoken of. From whom is the plaintiff entitled to "claim damages?" Manifestly from the same person, and in his representative capacity. If we look to the prayer of the petition, we still find the same phraseology. Petitioner "prays your honorable court to grant an injunction restraining the said *J. B. F. Maxent*, styling himself executor as aforesaid," &c.; and that said *J. B. F. Maxent*," &c. "be duly cited," &c., "and be, *in solido*, sentenced, as co-trespassers on petitioner's rights and property, to pay him damages," &c. Thus we perceive that, throughout the whole petition, in the narrative and charging clauses, as well as in the prayer, *Maxent* is referred to, either directly or by direct implication, in his representative capacity.

We submit that a party who has acted in a representative capacity, when that capacity is admitted, or at least not denied, cannot be rendered personally responsible by any implication. The textural provisions of our code, as well as common justice, require that a party should be distinctly advised of the nature of the demand made against him, and the capacity in which he is sought to be rendered responsible, as well as of the nature of the title, or the cause of action on which it is founded. C. P. art. 172, sec. 3. In the case before the court, the writ enjoined was ordered to be issued by *Maxent* in his representative capacity. In that capacity he was enjoined from further proceedings under the writ. His *(Maxent's)* death was suggested of record in July, 1850 Prior to

McMICKEN
*v.*
MAXENT.

October term, 1850, another person had been appointed, by competent authority, dative testamentary executor, and notice thereof had been given to the plaintiff in injunction; and it was not until after proper parties had thus been made, that an attempt was made to render his *(Maxent's)* heirs personally responsible. We have said that the injunction was asked for and granted against *Maxent* in his representative capacity, and such is the fact; if not, he or his successor had a legal right to proceed and sell under the *fi. fa.* and levy enjoined, and this without rendering the present executor responsible personally, or the estate he represents—a dilemma in which we apprehend the party enjoining would not be willing to be placed.

If it be urged, as it has been elsewhere, that there is no merit in the position we take—that it is purely technical; then we join issue and say there is merit always in endeavoring to compel parties who seek redress for real or pretended injuries, to be plain, frank and explicit in their pleadings, and that courts of justice will not, or should not countenance occult meanings and obscurities, and permit parties to "falter with them in a double sense." *Wilcox* v. *Henderson*, 2d Ann. 152.

The judgment of the court was pronounced by

EUSTIS, C. J. This appeal is taken by the plaintiff from an interlocutory order of the District Court of East Baton Rouge, refusing to make the widow and heirs of the deceased *J. B. F. Maxent*, parties to this suit.

The authorities cited in the written argument, show conclusively that no appeal lies from an order of this kind. The motion to dismiss the appeal must therefore prevail.

This appeal is dismissed, with costs.